**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

————————

No. 23-1057T
Judge Philip S. Hadji

————————

MARSHALL T. AND TAMI SAVAGE,

*Plaintiffs,*

v.

THE UNITED STATES,

*Defendant.*

————————

**MOTION OF THE UNITED STATES TO DISMISS THE COMPLAINT
AND MEMORANDUM IN SUPPORT THEREOF**

————————

DAVID A. HUBBERT
Deputy Assistant Attorney General

DAVID I. PINCUS
JASON BERGMANN
KAREN E. SERVIDEA
MICHAEL T. COLLINS
Attorneys
U.S. Department of Justice – Tax Division
Court of Federal Claims Section
P.O. Box 26
Washington, D.C.  20044
Phone:  (202) 616-3423
Fax:  (202) 514-9440
E-mail:  karen.e.servidea@usdoj.gov

## <u>TABLE OF CONTENTS</u>

**Page:**

Motion of the United States to Dismiss the Complaint and Memorandum in Support Thereof ..1

Introduction ........................................................................................................................1

Questions Presented ...........................................................................................................3

Statement ............................................................................................................................4

      A.    Plaintiffs File Original Returns for Tax Years 2008 Through 2013 ....................4

      B.    Plaintiffs File an Amended Return (Claim for Refund) for Tax Year 2014 ........5

      C.    Plaintiffs File Amended Returns (Claims for Refund) for Tax Years 2008 Through 2013 ..................................................................................................6

Standard of Review ............................................................................................................8

Argument ...........................................................................................................................8

      I.    This Court Lacks Jurisdiction Where Plaintiffs Filed their Claims for Refund with the IRS After the Period of Limitations Expired ...................................................8

      II.    Plaintiffs Are Not Entitled to Relief Under the Mitigation Provisions of the Internal Revenue Code ......................................................................................10

            A.    The Mitigation Provisions of §§ 1311-1314 ..........................................10

            B.    The Mitigation Theory in Plaintiffs' Claims for Refund .......................11

            C.    The Mitigation Theory in Plaintiffs' Complaint .....................................14

             D.    The Mitigation Theory in Plaintiffs' Claims for Refund Fails Because the IRS Did Not Maintain an Inconsistent Position ....................................15

            E.    The Mitigation Theory Set Forth in the Complaint Fails .......................19

                   1.    The Disposition of the 2014 Amended Return Did Not Disallow Deductions or Credits that Should Have Been Allowed to, but Were Not Allowed to, Plaintiffs for 2008 Through 2013 ..........................20

                   2.    The Periods of Limitations for 2008 Through 2013 Were Closed When Plaintiffs Filed their 2014 Amended Return ....................................22

i

Conclusion ................................................................................................................24

**Appendix (Under Separate Cover):**

| Defendant Exhibit No. | Description | Page |
|---|---|---|
| 1 | Certificate of Assessments, Payments, and Other Specified Matters for Plaintiffs' 2008 Federal Income Tax Year | A-1 |
| 2 | Certificate of Assessments, Payments, and Other Specified Matters for Plaintiffs' 2009 Federal Income Tax Year | A-5 |
| 3 | Certificate of Assessments, Payments, and Other Specified Matters for Plaintiffs' 2010 Federal Income Tax Year | A-8 |
| 4 | Certificate of Assessments, Payments, and Other Specified Matters for Plaintiffs' 2011 Federal Income Tax Year | A-12 |
| 5 | Certificate of Assessments, Payments, and Other Specified Matters for Plaintiffs' 2012 Federal Income Tax Year | A-16 |
| 6 | Certificate of Assessments, Payments, and Other Specified Matters for Plaintiffs' 2013 Federal Income Tax Year | A-20 |
| 7 | Certificate of Assessments, Payments, and Other Specified Matters for Plaintiffs' 2014 Federal Income Tax Year | A-24 |

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases:**

*Aerolineas Argentinas v. United States*,
   77 F.3d 1564 (Fed. Cir. 1996)..............................................................................................8

*Brigham v. United States*,
   470 F.2d 571 (Ct. Cl. 1972) ...........................................................................................17, 18

*Estes Exp. Lines v. United States*,
   739 F.3d 689 (Fed. Cir. 2014).............................................................................................8

*F.W. Boelter Co. v. United States*,
   12 Cl. Ct. 120 (1987) .....................................................................................................17, 18

*Glatt v. United States*,
   470 F.2d 596 (Ct. Cl. 1972) ...........................................................................................17, 18

*Hall v. United States*,
   111 Fed. Cl. 766 (2013) ...............................................................................11, 20, 21, 23

*Heineman v. United States*,
   391 F.2d 648 (Ct. Cl. 1968) .......................................................................2, 3, 16, 17, 18

*Karpe v. United States*,
   335 F.2d 454 (Ct. Cl. 1964) ...............................................................................................15

*Kavanaugh v. Noble*,
   332 U.S. 535 (1947)...............................................................................................................9

*Last v. United States*,
   37 Fed. Cl. 1 (1996) .......................................................................................................9, 11

*Longiotti v. United States*,
   635 F. Supp. 840 (M.D.N.C. 1986), *aff'd*, 819 F.2d 65 (4th Cir. 1987)...........................21

*Longiotti v. United States*,
   819 F.2d 65 (4th Cir. 1987) .......................................................................................11, 20, 21

*O'Brien v. United States*,
   766 F.2d 1038 (7th Cir. 1985) ..........................................................................................10

*Reynolds v. Army & Air Force Exch. Serv.*,
   846 F.2d 746 (Fed. Cir. 1988)..............................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases (Continuation):**

*South Corp. v. United States,*
690 F.2d 1368 (Fed. Cir. 1982)..........................................................................2

*TLI, Inc. v. United States,*
100 F.3d 424 (5th Cir. 1996) ........................................................ 19-20, 21, 22

*United States v. Dalm,*
494 U.S. 596 (1990)..........................................................................................9

*United States v. Sherwood,*
312 U.S. 584 (1941)..........................................................................................8

*United States v. Testan,*
424 U.S. 392 (1976)..........................................................................................8

**Statutes:**

Internal Revenue Code of 1986 (26 U.S.C.):

§ 465........................................................................................................5, 13

§ 613..............................................................................................................5

§ 613A............................................................................................................5

§ 1311.................................................................................................. *passim*

§ 1312.................................................................................................. *passim*

§ 1313.................................................................................................. *passim*

§ 1314.................................................................................................. *passim*

§ 6402..............................................................................................................6

§ 6511.................................................................................................. *passim*

§ 7122............................................................................................................11

§ 7422......................................................................................................8, 9

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes (Continuation):**

28 U.S.C. § 1491(a)(1)..................................................................................8

Technical Changes Act of 1953. Pub. L. No. 83-287, § 211, 67 Stat. 615, 625.....................19

**Other Authorities:**

Rules of the United States Court of Federal Claims Rule 12 ....................................1

S. Rep. No. 83-685 (1953), *reprinted in* 1953 U.S.C.C.A.N. 2423.........................................19

Treasury Regulations (26 C.F.R):

§ 1.1311(b)-2..............................................................................................23

§ 301.6402-3 ............................................................................................6

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| MARSHALL T. AND TAMI SAVAGE,<br><br>            *Plaintiffs*,<br><br>v.<br><br>THE UNITED STATES,<br><br>            *Defendant*. | No. 23-1057T<br>Judge Philip S. Hadji |

## MOTION OF THE UNITED STATES TO DISMISS THE COMPLAINT AND MEMORANDUM IN SUPPORT THEREOF

The United States respectfully moves the Court, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims, to dismiss the complaint for lack of subject matter jurisdiction. As grounds for this Motion, the United States submits the following memorandum.

### INTRODUCTION

Plaintiffs Marshall and Tami Savage sue for refunds of federal income taxes for their 2008 through 2013 tax years. The timely filing with the Internal Revenue Service ("IRS") of a claim for refund is a jurisdictional prerequisite to bringing a refund suit. The normal period of limitations for filing a refund claim with the IRS is three years from the filing of the return, or two years from payment of tax, whichever period is greater. 26 U.S.C. §[1] 6511(a).

There is no dispute that plaintiffs' refund claims for 2008 through 2013 were not filed within three years from the time the returns were filed, or within two years from the time the

_____

[1] Unless otherwise indicated, the use of the section symbol ("§") or the word "section" refers to the Internal Revenue Code of 1986 ("Code" or "I.R.C."), codified at Title 26 of the United States Code, as amended and in effect during the relevant period.

taxes were paid, as required by § 6511(a). Plaintiffs attempt to circumvent that jurisdictional bar by invoking the mitigation provisions, §§ 1311-1314 of the Internal Revenue Code, but they have not satisfied the conditions that must be met for those provisions to apply. In all but two types of cases, mitigation is available only if the party against whom mitigation would operate (here, the IRS) maintained an inconsistent position. As the Court of Claims explained:

> So far as relief for a taxpayer is concerned, [the mitigation provisions] permit an adjustment where (1) there is a determination (as defined in section 1313) which adopts a position maintained by the Commissioner, and (2) that position is inconsistent with the erroneous tax treatment of a transaction in a previous taxable year, and (3) this inconsistency results in double taxation of an item or in one of the other inequitable results enumerated in section 1312.

*Heineman v. United States*, 391 F.2d 648, 651 (Ct. Cl. 1968).[2] In *Heineman*, the Court held that the mitigation provisions did not apply "because there has been no inconsistent position maintained by the Commissioner as required by section 1311(b)(1)(A)." *Id.*

One of two types of cases in which mitigation might be available even though the party against whom it would operate did not maintain an inconsistent position is when a taxpayer claims a deduction or credit for one year, which is determined to be the incorrect year after the limitations period for the correct year has closed. In that circumstance, if a claim for refund for the correct year would not have been barred when the taxpayer made its claim for the incorrect year, then mitigation would allow the taxpayer to correct the error.

Plaintiffs argue that they are entitled to mitigation with respect to the years in suit (2008 through 2013) based on the disposition of an amended return filed by plaintiffs for their 2014 tax year. The 2014 amended return claimed a refund, and the IRS allowed that claim. As will be

_____

[2] Holdings of the Court of Claims are binding precedent in the Federal Circuit. *South Corp. v. United States*, 690 F.2d 1368, 1369 (Fed. Cir. 1982).

discussed below, plaintiffs offer two alternative theories for the application of the mitigation provisions. Plaintiffs' first theory posits that the disposition of the 2014 amended return was inconsistent with the allowance of deductions claimed on plaintiffs' original 2008 through 2013 tax returns. Mitigation is not available to plaintiffs under that theory, however, because, as in *Heineman*, the IRS did not maintain the position adopted in the alleged "determination." (Instead, it was *plaintiffs* who maintained that position.)

Under plaintiffs' second theory, the disposition of the 2014 amended return disallowed deductions or credits that should have been allowed to, but were not allowed to, plaintiffs for the years in suit. That theory also fails – first, because plaintiffs have not shown that the disposition of the 2014 amended return disallowed deductions or credits that should have been, but were not, allowed to plaintiffs for 2008 through 2013, and, second, because the period of limitations for filing a claim for refund for each of plaintiffs' 2008 through 2013 years was closed at the time that plaintiffs filed their 2014 amended return.

## QUESTIONS PRESENTED

1.      Does the Court lack jurisdiction over the complaint where plaintiffs filed their claims for refund after the statute of limitations had expired?

2.      Does plaintiffs' theory set forth in their claims for refund that the mitigation provisions of the Internal Revenue Code relieve plaintiffs from the bar of the statute of limitations fail because there was not adopted in the alleged "determination" an inconsistent position maintained by the IRS?

3.      Does plaintiffs' theory of mitigation set forth in the complaint fail because the alleged "determination" did not disallow deductions or credits that should have been allowed to, but were not allowed to, plaintiffs for the years in suit, and because the periods of limitations for

the years in suit were not open when plaintiffs filed their amended return for the (alleged)

determination year?

**STATEMENT**[3]

Plaintiffs are individual taxpayers. Compl. ¶ 1. They seek refunds of federal income taxes

of $181,518, $103,137, $138,968, $200,346, $102,521, and $29,389, for their taxable years

2008, 2009, 2010, 2011, 2012, and 2013, respectively. Compl. ¶ 69.

### A.   Plaintiffs File Original Returns for Tax Years 2008 Through 2013

Plaintiffs filed original federal income tax returns and paid federal income taxes for the

years 2008 through 2013 as follows:

| Tax Year | Date Return Filed | Tax Assessed upon Filing of Return | Payments Made | Citation |
|----------|-------------------|-----------------------------------|---------------|----------|
| 2008 | Oct. 19, 2009 | $245,633 | Withholding, estimated tax payments, overpaid credits from prior tax period, refundable credits. | Def. Ex. 1 at A-2 |
| 2009 | Oct. 12, 2010 | $138,662 | Withholding, estimated tax payments, an overpaid credit from prior tax period, a payment on April 15, 2010, and a refundable credit. | Def. Ex. 2 at A-6 |
| 2010 | Oct. 28, 2011 | $250,544 | Withholding, estimated tax payments, an overpaid credit from prior tax period, and a refundable credit. | Def. Ex. 3 at A-9 |

---

[3] The following statement of facts is taken from plaintiffs' complaint and certified transcripts of account for plaintiffs' 2008 through 2014 tax years included in the appendix hereto as Defendant Exhibits 1 through 7. The United States accepts as true, for purposes of this motion only, the allegations in the complaint that are specifically cited herein, to the extent that they are consistent with the facts set forth herein. The United States reserves the right to challenge such factual assertions in any future proceedings.

4

| 2011 | Oct. 12, 2012 | $213,442 | Withholding, estimated tax payments, and an overpaid credit from prior tax period. | Def. Ex. 4 at A-13 |
|------|---------------|----------|-----------------------------------------------------------------------------------|---------------------|
| 2012 | Oct. 15, 2013 | $101,260 | Withholding, estimated tax payments, and overpaid credits from prior tax period. | Def. Ex. 5 at A-17 |
| 2013 | Oct. 10, 2014 | $29,018 | Withholding, estimated tax payments, and overpaid credit from prior tax period. | Def. Ex. 6 at A-21 |

**B.     Plaintiffs File an Amended Return (Claim for Refund) for Tax Year 2014**

On March 20, 2018, having previously filed an original income tax return for 2014, plaintiffs filed a Form 1040X, Amended U.S. Individual Income Tax Return, for that year. Compl. ¶ 6; Compl. Ex. A (ECF No. 10-1); Def. Ex. 7 at A-24-25. The complaint describes the amended return for 2014 as having "amend[ed] and correct[ed] the reporting of [plaintiffs'] investment in Savage Resources, LLC as subject to the at-risk limitations of Section 465 of the Internal Revenue Code . . . and the limitations on percentage depletion set forth in Sections 613 and 613A of the [Internal Revenue] Code." Compl. ¶ 6. The amended return for 2014 decreased the amount of income reported on Form 1040, Line 17 ("Rental real estate, royalties, partnerships, S corporations, trusts, etc."), from $596,274 to $570,735. Compl. Ex. A (ECF No. 10-1 at 3, 7, 81). It also decreased the amount reported as "Other income" on Form 1040, Line 21, from negative $53,152 (including a net operating loss ( "NOL") carryover of $53,152) to negative $710,503 (including an NOL carryover of $778,565). *Id.* (ECF No. 10-1 at 4, 7, 32, 81, 111). The amended return for 2014 also decreased the deduction claimed for self-employment tax on Form 1040, Line 27, from $2,545 to $0. *Id.* (ECF No. 10-1 at 5, 7, 81).

As a result of the foregoing changes, the amended return for 2014 decreased the amount reported as plaintiffs' adjusted gross income (Form 1040, Line 37) from $656,523 to negative

$23,822. *Id.* (ECF No. 10-1 at 1, 5, 7, 81). Accordingly, after computational adjustments to plaintiffs' itemized deductions (Form 1040, Line 40) and a change in plaintiffs' claimed exemption amount (Form 1040, Line 42), the amended return decreased the amount of tax reported on Form 1040, Line 44, from $165,538 to $0. *Id.* (ECF No. 10-1 at 1, 5, 8, 82). Additional changes were made to total credits claimed on Form 1040, Line 55, self-employment tax reported on Form 1040, Line 57, and taxes from Form 8960 reported on Form 1040, Line 62. *Id*. (ECF No. 10-1 at 5, 8, 82). In the end, the amended return decreased the amount reported as plaintiffs' total tax (Form 1040, Line 63) from $184,232 to $0. *Id.* (ECF No. 10-1 at 1, 6, 8, 82). After an additional change to a refundable credit, the amended return reported an overpayment of $185,232, and requested that amount as a refund. *Id.* (ECF No. 10-4 at 1, 6).

By letter dated March 13, 2020, the IRS informed plaintiffs that their claim for 2014 had been accepted.[4] Compl. ¶ 8 & Ex. B (ECF No. 10-2). On May 31, 2021, the IRS abated tax of $184,232. Def. Ex. 7 at A-26. On June 7, 2021, the IRS issued plaintiffs a refund for their 2014 tax year of $238,512.78, which amount included statutory interest of $53,280.78 and a refundable credit of $1,000. *Id*.

### C.   Plaintiffs File Amended Returns (Claims for Refund) for Tax Years 2008 Through 2013

On or after April 19, 2021, plaintiffs filed a Form 1040X, Amended U.S. Individual Income Tax Return, for each of the years 2008 through 2013.[5] Compl. ¶ 10; Compl. Ex. D (ECF

---

[4] Treas. Reg. (26 C.F.R.) § 301.6402-3(a)(5) provides, in pertinent part, that "[a] properly executed individual . . . amended return (on 1040X . . . ) shall constitute a claim for refund or credit within the meaning of [26 U.S.C. §§ 6402 and 6511] for the amount of the overpayment disclosed by such . . . amended return[]."

[5] Plaintiffs also filed amended returns for tax years 2006 and 2007 on or after April 19, 2021. Compl. ¶ 10. Such amended returns reported increased tax liabilities. Compl. ¶¶ 10.a, 10.b.

No. 10-4); Compl. Ex. F (ECF No. 10-6); Compl. Ex. G (ECF No. 10-7); Compl. Ex. H (ECF No. 10-8); Compl. Ex. I (ECF No. 10-9); Compl. Ex. K (ECF No. 10-11). Each of the amended returns for 2008, 2009, and 2013 included (among other changes): (1) a positive adjustment to the amount reported on Form 1040, Line 17 ("Rental real estate, royalties, partnerships, S corporations, trusts, etc."); and (2) a decrease in the amount reported as plaintiffs' alternative minimum tax (Form 1040, Line 45). Compl. Ex. D (ECF No. 10-4 at 3-5, 12-13, 67-68); Compl. Ex. F (ECF No. 10-6 at 4-5, 7, 13-14, 102-03); Compl. Ex. K (ECF No. 10-11 at 3-4, 6, 14-15, 119-20). Each of the amended returns for 2010, 2011, and 2012 included (among other changes) a negative adjustment to the amount reported on Form 1040, Line 17 ("Rental real estate, royalties, partnerships, S corporations, trusts, etc."). Compl. Ex. G (ECF No. 10-7 at 3-4, 14, 98); Compl. Ex. H (ECF No. 10-8 at 3-4, 13, 89); Compl. Ex. I (ECF No. 10-9 at 3-4, 13, 96).

The amended returns sought refunds of $181,518 (for 2008), $103,137 (for 2009), $138,968 (for 2010), $200,346 (for 2011), $102,521 (for 2012), and $29,389 (for 2013). Compl. Ex. D (ECF No. 10-4 at 1); Compl. Ex. F (ECF No. 10-6 at 1); Compl. Ex. G (ECF No. 10-7 at 1); Compl. Ex. H (ECF No. 10-8 at 1); Compl. Ex. I (ECF No. 10-9 at 1); Compl. Ex. K (ECF No. 10-11 at 1).

The IRS disallowed plaintiffs' claim for refund for 2008 by letter dated July 30, 2021, (Compl. Ex. E (ECF No. 10-5)); disallowed plaintiffs' claim for refund for 2010 by letter dated September 8, 2021, (Compl. Ex. N (ECF No. 10-14)); disallowed plaintiffs' claim for refund for 2012 by letter dated July 13, 2021, (Compl. Ex. J (ECF No. 10-10)); and disallowed plaintiffs' claim for refund for 2013 by letter dated July 15, 2021, (Compl. Ex. L (ECF No. 10-12)). As of the filing of the complaint (on July 11, 2023), the IRS had not acted upon plaintiffs' claim for refund for 2009 or plaintiffs' claim for refund for 2011. Compl. ¶¶ 24, 44.

**STANDARD OF REVIEW**

Every plaintiff "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). "In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Estes Exp. Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014). If jurisdictional facts are challenged, however, courts may go beyond the pleadings when ascertaining the existence of subject-matter jurisdiction. *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572 (Fed. Cir. 1996).

**ARGUMENT**

I.    **THIS COURT LACKS JURISDICTION WHERE PLAINTIFFS FILED THEIR CLAIMS FOR REFUND WITH THE IRS AFTER THE PERIOD OF LIMITATIONS EXPIRED**

The Tucker Act confers jurisdiction on this Court "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). "[T]he United States, as sovereign, 'is immune from suit, save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Testan*, 424 U.S. 392, 399 (1976) (omission in original) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).

With respect to claims against the United States for the refund of any "tax," "penalty," or "sum," § 7422(a) provides as follows:

> **(a) No suit prior to filing claim for refund.--**No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been

8

excessive or in any manner wrongfully collected, until a claim for refund or credit
has been duly filed with the Secretary, according to the provisions of law in that
regard, and the regulations of the Secretary established in pursuance thereof.

One of the provisions of law that determines whether a claim for refund has been duly

filed with the Secretary is § 6511(a). That section provides, in pertinent part:

**(a) Period of limitation on filing claim**.--Claim for credit or refund of an
overpayment of any tax imposed by this title in respect of which tax the taxpayer
is required to file a return shall be filed by the taxpayer within 3 years from the
time the return was filed or 2 years from the time the tax was paid, whichever of
such periods expires the later, . . .

"Statutes of limitation are strictly construed by the courts. 'Such periods are established

to cut off rights, justifiable or not, that might otherwise be asserted, and they must be strictly

adhered to by the judiciary.'" *Last v. United States*, 37 Fed. Cl. 1, 5 (1996) (quoting *Kavanaugh

v. Noble*, 332 U.S. 535, 539 (1947)). The statute of limitations on filing claims for refund

requires that the claim for refund be filed within three years from the filing of the return, or two

years from payment of tax, whichever period is greater, or if no return was filed, then two years

from payment of the tax. § 6511(a).[6] Where the time for filing a claim for refund expired before

such a claim was filed, there is no jurisdiction over a refund suit based on the late claim.

§ 7422(a); *United States v. Dalm*, 494 U.S. 596, 600, 609 (1990).

Here, plaintiffs allege filing their claims for refund for their 2008 through 2013 tax years

on April 19, 2021. Compl. ¶ 4. The period of limitations under § 6511(a) for plaintiffs to file a

claim for refund for 2008 expired on October 19, 2012. Plaintiffs' claim for refund, filed on

April 19, 2021, at the earliest, is at least eight years late and, therefore, is barred by the statute of

---

[6] Section 6511(d) provides alternative periods of limitations for filing claims for refund in
certain circumstances. Plaintiffs have not alleged that they are entitled to any of the alternative
periods of limitations provided by § 6511(d).

limitations. The period of limitations under § 6511(a) for plaintiffs to file a claim for refund for

2009 expired on October 12, 2013. Plaintiffs' claim for refund, filed on April 19, 2021, at the

earliest, is at least seven years late and, therefore, is barred by the statute of limitations. The

period of limitations under § 6511(a) for plaintiffs to file a claim for refund for 2010 expired on

October 28, 2014. Plaintiffs' claim for refund, filed on April 19, 2021, at the earliest, is at least

six years late and, therefore, is barred by the statute of limitations. The period of limitations

under § 6511(a) for plaintiffs to file a claim for refund for 2011 expired on October 12, 2015.

Plaintiffs' claim for refund, filed on April 19, 2021, at the earliest, is at least five years late and,

therefore, is barred by the statute of limitations. The period of limitations under § 6511(a) for

plaintiffs to file a claim for refund for 2012 expired on October 15, 2016. Plaintiffs' claim for

refund, filed on April 19, 2021, at the earliest, is at least four years late and, therefore, is barred

by the statute of limitations. The period of limitations under § 6511(a) for plaintiffs to file a

claim for refund for 2013 expired on October 10, 2017. Plaintiffs' claim for refund, filed on

April 19, 2021, at the earliest, is at least three years late and, therefore, is barred by the statute of

limitations.

## II.    PLAINTIFFS ARE NOT ENTITLED TO RELIEF UNDER THE MITIGATION PROVISIONS OF THE INTERNAL REVENUE CODE

### A.    The Mitigation Provisions of §§ 1311-1314

The mitigation provisions of the Internal Revenue Code provide rules under which either

the Secretary of the Treasury or the taxpayer may be relieved from the statute of limitations in

very limited circumstances with respect to assessments of taxes or claims for refund to correct an

error. The party seeking the benefit of the mitigation provisions has the burden of establishing its

entitlement to relief under those provisions. *O'Brien v. United States*, 766 F.2d 1038, 1042 (7th

Cir. 1985). The mitigation provisions do "not purport to relieve against all inequities occasioned

by the statute of limitations" and "must be strictly construed." *Hall v. United States*, 111 Fed. Cl. 766, 771 (2013) (internal quotation marks and citation omitted).

Three elements are required for the mitigation provisions to apply: First, there must be a "determination" as defined in § 1313(a). Second, that determination must fall into one of the "circumstances of adjustment" described in § 1312(1)–(7). And, third, depending upon which circumstance of adjustment is found, as a "condition necessary" to obtaining an adjustment, either (a) there must have been adopted in the determination an inconsistent position maintained by the party *against* whom mitigation will operate, § 1311(b)(1), or (b) the correction of the error must not have been barred at the time the party *for* whom mitigation will operate first maintained its position in writing, § 1311(b)(2). *See* § 1311; *Longiotti v. United States*, 819 F.2d 65, 68 (4th Cir. 1987); *Last*, 37 Fed. Cl. at 7-8.[7]

**B.    The Mitigation Theory in Plaintiffs' Claims for Refund**

In their claims for refund for 2008 through 2013, plaintiffs alleged for the first mitigation element that the letter issued by the IRS to plaintiffs on March 13, 2020, relating to their amended return for 2014 was a "determination" under § 1313(a)(3). Compl. Ex. D (ECF No. 10-4 at 3, 7); Compl. Ex. F (ECF No. 10-6 at 4, 9); Compl. Ex. G (ECF No. 10-7 at 3, 8); Compl. Ex. H (ECF No. 10-8 at 3, 8); Compl. Ex. I (ECF No. 10-9 at 3, 7); Compl. Ex. K (ECF No. 10-

---

[7] In addition, "on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 [must be] prevented by the operation of any law or rule of law, other than [the mitigation provisions] and other than section 7122 (relating to compromises)." § 1311(a).

11 at 3, 8). That paragraph refers to "a final disposition by the [IRS] of a claim for refund."

§ 1313(a)(3).[8]

For the second mitigation element, plaintiffs alleged in their claims for refund for 2008 through 2013 that the March 13, 2020, letter with respect to 2014 falls within the circumstance of adjustment described in § 1313(2). Compl. Ex. D (ECF No. 10-4 at 3); Compl. Ex. F (ECF No. 10-6 at 4); Compl. Ex. G (ECF No. 10-7 at 3); Compl. Ex. H (ECF No. 10-8 at 3); Compl. Ex. I (ECF No. 10-9 at 3); Compl. Ex. K (ECF No. 10-11 at 3). That provision refers to a determination that "allows a deduction or credit which was erroneously allowed to the taxpayer for another taxable year or to a related taxpayer." § 1313(2). In that regard, plaintiffs asserted that "[t]he IRS determination for the 2014 Amended return allow[ed] deductions and losses, which were erroneously allowed to [plaintiffs] on their 2006 to 2013 tax year returns" and that "[t]his constitutes double allowance of deductions for Intangible Drilling Costs, Depletion, Net

---

[8] More specifically, § 1311(a) provides (in pertinent part):

**(a) Determination.**—For purposes of this part, the term "determination" means—

. . .

(3) a final disposition by the Secretary of a claim for refund. For purposes of this part, a claim for refund shall be deemed finally disposed of by the Secretary—

    (A) as to items with respect to which the claim was allowed, on the date of allowance of refund or credit or on the date of mailing notice of disallowance (by reason of offsetting items) of the claim for refund, and

    (B) as to items with respect to which the claim was disallowed, in whole or in part, or as to items applied by the Secretary in reduction of the refund or credit, on expiration of the time for instituting suit with respect thereto (unless suit is instituted before the expiration of such time); or

. . . .

Operating Losses and other deductions." Compl. Ex. D (ECF No. 10-4 at 3); Compl. Ex. F (ECF

No. 10-6 at 4); Compl. Ex. G (ECF No. 10-7 at 3); Compl. Ex. H (ECF No. 10-8 at 3); Compl.

Ex. I (ECF No. 10-9 at 3); Compl. Ex. K (ECF No. 10-11 at 3).

Where a determination falls within the circumstance of adjustment described in

§ 1313(2), § 1311(b)(1) provides the applicable condition necessary to obtain an adjustment

under the mitigation provisions (*i.e.*, the third mitigation element). It specifies that:

> an adjustment shall be made . . . only if—
>
> (A) in case the amount of the adjustment would be credited or refunded in the same manner as an overpayment under section 1314, there is adopted in the determination a position maintained by the [IRS], or
>
> (B) in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under section 1314, there is adopted in the determination a position maintained by the taxpayer with respect to whom the determination is made,
>
> and the position maintained by the [IRS] in the case described in subparagraph (A) or by the taxpayer in the case described in subparagraph (B) is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be.

§ 1311(b)(1). In their claims for refund for 2008 through 2013, plaintiffs asserted that "[t]he IRS

determination for the 2014 amended return adopted the position that [plaintiffs'] claimed 2006 to

2013 Intangible Drilling Cost and other deductions, which [sic] should have been suspended

under I.R.C. Section 465" and "accepted Net Operating Loss, Depletion and other carryover

amendments, included in the 2014 amended return." Compl. Ex. D (ECF No. 10-4 at 3); Compl.

Ex. F (ECF No. 10-6 at 4); Compl. Ex. G (ECF No. 10-7 at 3); Compl. Ex. H (ECF No. 10-8 at

3); Compl. Ex. I (ECF No. 10-9 at 3); Compl. Ex. K (ECF No. 10-11 at 3). They further alleged

that "[t]his is inconsistent with the error that occurred in the [2008, 2009, 2010, 2011, 2012, and

2013] originally filed return[s] as required by I.R.C. Section 1311(b)." *Id.*

13

C.        **The Mitigation Theory in Plaintiffs' Complaint**

The complaint sets forth a different theory as to why plaintiffs allegedly are entitled to

relief under the mitigation provisions. With respect to the first mitigation element, the complaint

refers to the "IRS [d]etermination for the 2014 [t]ax [y]ear" and recounts various dates and

events relating to plaintiffs' amended return for 2014. Compl. (ECF No. 10 at 2); *id.* ¶¶ 6-9; *see*

*also id.* ¶¶ 13, 22, 29, 42, 49, 59. The complaint does not explicitly identify the part of

§ 1313(a)'s definition of "determination" upon which plaintiffs rely. *See id.*

For the second mitigation element, the complaint appears to rely on the circumstance of

adjustment described in § 1312(4), which is that "[t]he determination disallows a deduction or

credit which should have been allowed to, but was not allowed to, the taxpayer for another

taxable year, or to a related taxpayer." *See* Compl. ¶¶ 12-13, 21-22, 28-29, 41-42, 48-49, 58-59.

In particular, the complaint alleges that:

> [] The 2014 Amended Return, to which the IRS agreed, included *inter*
> *alia*, a recalculation of net operating loss deductions and at-risk carryovers
> disallowing deductions which should have been allowed to Plaintiffs on the
> Original [2008, 2009, 2010, 2011, 2012, and 2013] Return[s]. Plaintiffs filed the
> [2008, 2009, 2010, 2011, 2012, and 2013 Amended Returns] . . . to correct this
> double disallowance of deductions . . . .
>
> [] The positions taken by the IRS with respect to the 2014 Amended
> Return are inconsistent with the erroneous disallowance of deductions as reported
> on the Original [2008, 2009, 2010, 2011, 2012, and 2013] Return[s].

*Id.* (omission on fifth line applicable only to Compl. ¶¶ 21-22, 28-29, 41-42).

The complaint does not specifically address the third mitigation element. Where a

determination falls under the circumstance of adjustment described in § 1312(4), the condition

necessary to obtain an adjustment under the mitigation provisions (*i.e.*, the third mitigation

element) is that:

> credit or refund of the overpayment attributable to the deduction or credit
> described in [§ 1312(4)] which should have been allowed to the taxpayer or
> related taxpayer was not barred, by any law or rule of law, at the time the taxpayer
> first maintained before the [IRS] or before the Tax Court, in writing, that he was
> entitled to such deduction or credit for the taxable year to which the determination
> relates.

§ 1311(b)(2)(B).

### D. The Mitigation Theory in Plaintiffs' Claims for Refund Fails Because the IRS Did Not Maintain an Inconsistent Position

As explained above, plaintiffs' first theory posits (1) that the IRS's March 13, 2020, letter regarding plaintiffs' amended return for 2014 was a "determination" under § 1313(a)(3), and (2) that this alleged "determination" fell under the circumstance of adjustment described in § 1312(2). A determination falls under § 1312(2) if it "allows a deduction or credit which was erroneously allowed to the taxpayer for another taxable year or to a related taxpayer." Assuming *arguendo* that the first two premises of plaintiffs' theory are correct (and setting aside the anomaly of a taxpayer complaining about the *allowance* of a deduction or credit and whether the statutes permit such an anomaly), the theory nevertheless cannot succeed. That is because plaintiffs have not established the condition necessary for obtaining an adjustment in such circumstances – namely, that there was "adopted in [the disposition of plaintiffs' claim for refund for 2014] a position maintained by the [IRS]" that was "inconsistent with" one of the errors described in § 1311(b)(1) (here, plaintiffs alleged the erroneous allowance of deductions). § 1311(b)(1). Instead, plaintiffs were the party that maintained the position that was adopted in the disposition of their claim for refund for 2014. In allowing the 2014 refund claim, the IRS merely acceded to plaintiffs' position.

"[T]he requirement of section 1311(b)(1) is that the determination adopt a position inconsistent with the error and that this position must have been *actively* maintained by the party seeking to interpose the bar of the statute of limitations." *Karpe v. United States*, 335 F.2d 454,

461 (Ct. Cl. 1964) (footnotes omitted) (emphasis added). The Court of Claims has held that "[o]ne does not 'maintain' a position, in the ordinary sense of that phrase, merely by accepting a contention or position originated and actively asserted by an opposing party." *Heineman v. United States*, 391 F.2d 648, 651 (Ct. Cl. 1968). "In order for section 1311(b)(1) to apply, defendant, as the party relying upon the bar of the statute of limitations, must be the active party in maintaining the position, not merely a passive party acceding to a position actively maintained by taxpayers." *Id.*

In *Heineman*, the taxpayers, a surviving wife and the executors of her deceased husband's estate, sought refunds for 1944 through 1946 and 1948 through 1952. 391 F.2d at 649-50. Before filing suit, the decedent and his spouse timely filed a claim for refund for 1954, claiming *inter alia* that a distribution received from a company in which the decedent held stock was not an ordinary dividend distribution, but instead was a nontaxable distribution of capital. *Id.* at 650. The refund was allowed in full. *Id.* The taxpayers then filed claims for refund for 1944 through 1946 and 1948 through 1952, contending that the distributions from the same company in those years should also properly be treated as distributions in liquidation rather than as taxable dividends. *Id.* After the claims were disallowed as untimely, the taxpayers filed suit, invoking the mitigation provisions. *Id.*

The court considered the allowance of the 1954 claim to have been a "determination" within the meaning of § 1313 and assumed for the sake of argument that the position adopted in that determination was inconsistent with the previous erroneous tax treatment of the distributions. *Id.* at 651. The court nevertheless held that mitigation was not available to the taxpayers. *Id.* It explained that "[t]he allowance of the refund by the [IRS] clearly constituted the adoption of a position maintained by the taxpayers and not the [IRS], and yet it is the taxpayers

who are here relying on the mitigation provisions to open a closed year," a situation that the court determined to be "contrary to both the language and the purpose of the mitigation provisions." *Id.* The court went on to explain that "the mitigation provisions do not prevent the [IRS] from pleading the statute of limitations because the [IRS] was not the party who maintained the inconsistent position." *Id.*; *see also Glatt v. United States*, 470 F.2d 596, 601 (Ct. Cl. 1972) (holding that taxpayers were not entitled to mitigation with respect to a position that "was actively asserted in [the taxpayers'] own amended . . . returns" and explaining that "[t]he allowance of the refund by the [IRS] . . . did constitute adoption of an inconsistent position; but the position was one actively maintained by the [taxpayers] and not by the [IRS]"); *Brigham v. United States*, 470 F.2d 571, 574, 575-76 (Ct. Cl. 1972) (explaining that "[t]he requirement of the *maintenance* of the inconsistent position is basic to the existence of the statutory mitigation provisions" and holding that IRS did not adopt an inconsistent stance for an open year where it "merely acceded to the [taxpayers'] demand for the open year").

Similarly, in *F.W. Boelter Co. v. United States*, 12 Cl. Ct. 120, 123 (1987), this Court held that the taxpayer was not entitled to mitigation because "there [was] no inconsistent position actively maintained by the IRS." There, the taxpayer in 1982 discovered that it had improperly computed the value of its inventories for 1975 through 1981, the net effect of which error was to overstate income taxes due for each of the taxpayer's 1975 through 1981 tax years. *Id.* at 121. After correcting the errors in its inventories for 1975 through 1981, the taxpayer filed amended returns for 1979 through 1981. *Id*. at 121-22. The IRS performed a confirming audit and then accepted the returns and allowed refunds in the full amounts shown on them. *Id*. at 122. The taxpayer then filed amended returns for 1975 through 1978 claiming refunds. *Id.* Upon

determining that the claims were untimely, the IRS formally disallowed the claims for 1975, 1976, and 1978, while erroneously paying the claim for 1977. *Id.* at 122-23.

In the ensuing refund suit (which also involved the government's counterclaim for an erroneous refund with respect to 1977), the taxpayer invoked the mitigation provisions, positing that the allowance of the refund claims for 1979 through 1981 constituted an IRS determination that the computational corrections made to the taxpayer's inventory were proper. *Id.* at 122. The court held that mitigation was not available, explaining:

> [P]laintiff has failed to convince this Court that it suffered inconsistent treatment due to a position *actively maintained* by the IRS. In this case, plaintiff discovered the error in its own inventory accounts. It then made the appropriate corrections and filed claims for refund of the open years. After receiving the refunds for the open years, the plaintiff then filed claims for the closed years and is now claiming that the Commissioner is trying to use the statute of limitations as an offensive weapon in denying refunds for the closed years.
>
> Plaintiff was the active party in this instance, not the IRS. The IRS merely verified the accuracy of the plaintiff's recomputations and allowed refunds for the open years. . . . That a position is not "actively maintained" simply by accepting a contention or position originated and actively asserted by an opposing party is well settled. . . . An "active" position exists only where the party asserting the statute of limitations took the initiative and actively assumed a position inconsistent with the treatment of the same item in a prior year.

*Id.* at 125 (citing *Glatt*, 470 F.2d 596; *Brigham*, 470 F.2d 571; and *Heineman*, 391 F.2d 648).

Here, plaintiffs must show that the alleged determination upon which they rely – the disposition of plaintiffs' claim for refund for 2014 – adopted a position maintained by the IRS that was inconsistent with one of the errors described in § 1311(b)(1). The disposition of the 2014 claim for refund, however, was to allow the claim for refund. It was plaintiffs who sought the refund for 2014. As in *Heineman* and *F.W. Boelter*, the IRS simply acceded to the position that plaintiffs themselves maintained in their claim for refund and was not the active party in

maintaining the position set forth in such claim. Accordingly, an adjustment under the mitigation provisions is not available to plaintiffs under their first theory. § 1311(b)(1).

### E.   The Mitigation Theory Set Forth in the Complaint Fails

As explained above, plaintiffs' second theory posits that the disposition of their 2014 amended return constituted a "determination" within the meaning of § 1313(a) and that this alleged "determination" fell under the circumstance of adjustment described in § 1312(4). Section 1312(4) refers to a determination that "disallows a deduction or credit which should have been allowed to, but was not allowed to, the taxpayer for another taxable year, or to a related taxpayer." In the case of such a determination, mitigation is available only if the credit or refund of the overpayment attributable to the deduction or credit that should have been allowed to the taxpayer (or related taxpayer) "was not barred, by any law or rule of law, at the time the taxpayer first maintained before the [IRS] or before the Tax Court, in writing, that he was entitled to such deduction or credit for the taxable year to which the determination relates." § 1311(b)(2)(B).

The predecessor to § 1312(4) and § 1311(b)(2)(B) was enacted as part of the Technical Changes Act of 1953. Pub. L. No. 83-287, § 211, 67 Stat. 615, 625. The accompanying report of the Senate Finance Committee explained the function of the amendment as follows:

> Where a taxpayer claims a deduction or credit for a taxable year which is later determined to be the incorrect taxable year . . . the amendment would permit a proper adjustment. However, the taxpayer is entitled to the benefits of this provision only if a credit or refund of the overpayment attributable to the deduction or credit for the correct year . . . was not barred at the time the taxpayer formally asserted that he should have such credit or refund in the year disallowed.

S. Rep. No. 83-685, at 10-11 (1953), *reprinted in* 1953 U.S.C.C.A.N. 2423, 2432-33. As the Fifth Circuit has explained, "[s]ection 1312(4) applies in the select circumstances in which the taxpayer, while the correct taxable year is still open, picks the wrong year to take a deduction or credit and finds, when disallowance for the wrong year is determined, that the correct year is no

longer open." *TLI, Inc. v. United States*, 100 F.3d 424, 428 (5th Cir. 1996); *see also id.* at 428-29 (providing an example in which a taxpayer "files a claim for a refund in 1990, asserting that she neglected to include a charitable contribution for that year, and the claim is refused by the IRS and the courts on the basis that the contribution was actually paid in 1989," in which case the refund claim should be allowed for 1989 "[p]rovided that the claim would have been timely had it been filed when the unsuccessful 1990 claim was filed").

Here, plaintiffs are not entitled to mitigation under the theory in the complaint for at least two reasons: First, plaintiffs have not established that the alleged "determination" upon which they rely – the disposition of their 2014 amended return – disallowed deductions or credits that should have been allowed to, but were not allowed to, plaintiffs for tax years 2008 through 2013. Second, the limitations periods for plaintiffs to claim refunds for 2008 through 2013 were closed when plaintiffs filed their amended return for 2014.

1.   The Disposition of the 2014 Amended Return Did Not Disallow
     Deductions or Credits that Should Have Been Allowed to, but Were Not
     Allowed to, Plaintiffs for 2008 Through 2013

Plaintiffs' mitigation theory in the complaint fails because they have not shown that the alleged "determination" upon which they rely falls within the circumstance of adjustment described in § 1312(4). By its terms, § 1312(4) applies only where a determination disallows a deduction or credit. § 1312(4); *TLI*, 100 F.3d at 428-29. And, even where the determination has disallowed a deduction or credit, § 1312(4) applies only if the disallowed deduction or credit should have been allowed to, but was not allowed to, the taxpayer for another year (or to a related taxpayer). § 1312(4); *TLI*, 100 F.3d at 428-29; *Longiotti*, 819 F.2d at 68; *Hall*, 111 Fed. Cl. at 773. In that regard, "[the] mitigation of the statute of limitations—for a taxpayer who does not act to claim his [net operating losses]—is not the double tax situation that the mitigation

provisions aim to resolve." *Hall*, 111 Fed. Cl. at 773 (citing *Longiotti v. United States*, 635 F. Supp. 840, 842 (M.D.N.C. 1986), *aff'd*, 819 F.2d 65 (4th Cir. 1987)).

The Fifth Circuit's decision in *TLI* illustrates the requirements of § 1312(4). There, the taxpayer originally carried forward an unused investment tax credit from 1979 to 1980 and subsequent tax years. 100 F.3d at 425. Due to the disposal of property that generated investment tax credits in 1976 through 1979, the taxpayer was potentially subject to recapture tax in 1983 through 1986. *Id.* To compute the recapture tax, the taxpayer properly should have carried back its unused 1979 investment credit to prior tax years, and had the taxpayer done so, it would have avoided paying recapture taxes in 1983 through 1986. *Id.* at 425-26. But it failed to do so, thus erroneously paying recapture taxes it did not owe and claiming investment credit carryforwards to which it was not entitled. *Id.* at 426. After discovering the error, the taxpayer filed amended returns for 1983 through 1986, seeking to reduce the taxpayer's investment tax credit carryforward to the proper amount and to obtain a refund of the recapture taxes paid in error. *Id.* The IRS determined that the taxpayer would be allowed its claim for refund for 1985 and to reduce its investment tax credit carryover for 1986 but disallowed the taxpayer's claims for refunds for 1983 and 1984 as untimely. *Id.*

In the ensuing refund suit for 1983 and 1984, the taxpayer argued that the IRS's determination with respect to 1985 and 1986 constituted a "determination" that resulted in a "double disallowance" of the taxpayer's 1979 investment tax credits for use in its 1983 and 1984 tax years, thus meeting the circumstance of adjustment in § 1312(4). *Id*. at 428. The Fifth Circuit rejected that argument. *Id*. It reasoned that the IRS's determination with respect to 1985 and 1986 "did not disallow the taxpayer a deduction or credit, much less constitute a disallowance of a deduction or credit which should have been allowed to the taxpayer in another year." *Id.* at 429.

21

Continuing, the court explained that the "determination involved only the 1985 and 1986 tax years; it did not address substantively the taxpayer's entitlement to deductions or credits in any other year." *Id.*

Here, plaintiffs have not shown that the alleged "determination" upon which they rely – the disposition of their claim for refund for 2014 – disallowed a deduction or credit that should have been allowed to, but was not allowed to, plaintiffs for another tax year. As in *TLI*, plaintiffs cannot even show that the alleged determination disallowed a deduction or credit – instead, the IRS *allowed* plaintiffs' claim for refund for 2014.

        2.     The Periods of Limitations for 2008 Through 2013 Were Closed When Plaintiffs Filed their 2014 Amended Return

Assuming *arguendo* that the disposition of plaintiffs' amended return for 2014 constituted a § 1313(a) "determination" that disallowed a deduction or credit that should have been allowed to, but was not allowed to, plaintiffs for their 2008 through 2013 tax years, as described in § 1312(4), the mitigation provisions would nevertheless not lift the bar of the statute of limitations for plaintiffs to claim a refund for 2008 through 2013. That is because the condition necessary for an adjustment (*i.e.*, the third mitigation element) is unsatisfied. As outlined above, that condition is that "credit or refund of the overpayment attributable to the deduction or credit . . . which should have been allowed to [plaintiffs] was not barred . . . at the time [plaintiffs] first maintain[ed] before the [IRS] . . . , in writing, that [they] [were] entitled to such deduction or credit for the taxable year to which the determination relates." § 1311(b)(2)(B).

Under the mitigation theory set forth in the complaint, though contrary to the facts, plaintiffs are conceived as having claimed deductions or credits for 2014 that were disallowed in the alleged "determination," (which deductions should have been allowed to plaintiffs for their

2008 through 2013 tax years). The problem for plaintiffs is that they would not have maintained that position (*i.e.*, that they were entitled to the deductions or credits for 2014) before the IRS in writing until they filed their amended return for 2014. *See* Treas. Reg. § 1.1311(b)-2(b) (providing, in pertinent part, that "[t]he taxpayer will be considered to have first maintained in writing before the Commissioner or the Tax Court that he was entitled to such deduction or credit when he first formally asserts his right to such deduction or credit as, for example, in a return, in a claim for refund, or in a petition (or an amended petition) before the Tax Court"). Plaintiffs did not file their amended return for 2014 until March 20, 2018. By then, the period of limitations under § 6511(a) had expired for each of plaintiffs' 2008 through 2013 tax years. Thus, plaintiffs would not be entitled to relief under the mitigation provisions. *See Hall*, 111 Fed. Cl. at 773 (holding that plaintiffs had not met the third requirement to lift the bar of the statute of limitations for claiming a refund for 1992, 1995, and 1997, where the period of limitations for those years was closed when the taxpayers claimed a refund for the year subject to the determination (2003)).

Accordingly, plaintiffs are not entitled to mitigation under their second theory.

## CONCLUSION

WHEREFORE, defendant prays that its motion be granted and that the complaint be dismissed.

Respectfully submitted,

s/ *Karen E. Servidea*
KAREN E. SERVIDEA
Attorney of Record
U.S. Department of Justice – Tax Division
Court of Federal Claims Section
Post Office Box 26
Washington, D.C.  20044
Phone:  (202) 616-3423
Fax:  (202) 514-9440
E-mail:  karen.e.servidea@usdoj.gov

*Attorneys for the United States*


December 5, 2023

DAVID A. HUBBERT
Deputy Assistant Attorney General
DAVID I. PINCUS
Chief, Court of Federal Claims Section
JASON BERGMANN
Assistant Chief
MICHAEL T. COLLINS
Trial Attorney

s/ *Jason Bergmann*
Of Counsel